**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iLearningEngines, Inc., *et al.*, | Case No. 24-12826 (LSS) |
| Debtors.[1] | (Joint Administration Requested) |

**PRELIMINARY DECLARATION OF BONNIE-JEANNE GERETY IN
SUPPORT OF DEBTORS' CHAPTER 11 PETITIONS AND EMERGENCY
RELIEF REQUESTED BY INITIAL FIRST DAY MOTIONS**

I, Bonnie-Jeanne Gerety, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.  I am the Interim Chief Financial Officer of iLearningEngines, Inc. ("iLE") and have been designated by the above-captioned debtors and debtors in possession (the "Debtors" and the "Company") to oversee the filing of the Debtors' petitions for relief and to help manage the Debtors during the pendency of their chapter 11 cases (the "Chapter 11 Cases"). I was appointed to the position of Interim Chief Financial Officer on November 12, 2024. Prior to that appointment, I served as a consultant of the Company since July 2023. I have over 35 years of financial and consulting experience with the technology industry, most recently serving as Chief Financial Officer of Brain Scientific, Inc. from October 2021 to June 2023.

2.  On December 20, 2024 (the "Initial Petition Date"), Debtors iLE and iLearningEngines Holdings, Inc., each filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). On December 27, 2024 (together with the Initial Petition Date, the "Petition Dates"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: iLearningEngines, Inc. (1600); iLearningEngines Holdings, Inc. (2335); and iLearningEngines FZ-LLC (N/A). The mailing address for each of the Debtors for purposes of the Debtors' chapter 11 cases is 6701 Democracy Boulevard, Bethesda, MD 20817.

Debtor iLearningEngines FZ-LLC filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or an examiner. Further, concurrently herewith, the Debtors have filed a motion seeking joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

3. The Debtors are actively transitioning into chapter 11 and are in the process of gathering the information necessary to draft the customary motions seeking interim and final "first day" relief (the "<u>First Day Motions</u>"). As such, the Debtors intend to supplement this preliminary declaration (this "<u>Preliminary Declaration</u>") with a more fulsome declaration in support of those First Day Motions, once that additional information is available. However, the Debtors are aware of certain emergency relief that must be requested on an expedited basis (the "<u>Emergency Motions</u>") and submit this Preliminary Declaration to provide an initial overview of the Debtors' businesses and the events leading to the commencement of the Chapter 11 Cases as well as to support the Debtors' Emergency Motions.

4. Except as otherwise indicated herein, all facts set forth in this declaration are based upon my personal knowledge of the Debtors' operations, and finances, information learned from my review of relevant documents, information supplied to me by other members of the Debtors' management, consultation with the Debtors' professional advisors, or my opinion based on my experience, knowledge, and information concerning the Debtors' operations and financial condition. I believe all information herein to be true to the best of my knowledge. I am authorized to submit this declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

5.      As set forth in greater detail below, and as reflected in the Emergency Motions, the Debtors have filed the Chapter 11 Cases on an emergency basis to preserve and maximize the value of their assets for the benefit of their creditors and other stakeholders.

## I.      BACKGROUND REGARDING THE DEBTORS

### A.      Organizational Structure

6.      iLE (formerly Arrowroot Acquisition Corp.("ARRW")) entered into that certain *Agreement and Plan of Merger and Reorganization*, dated as of April 27, 2023 (as amended, the "Merger Agreement"), with ARAC Merger Sub, Inc., a Delaware corporation and wholly-owned subsidiary of ARRW ("Merger Sub") and iLearningEngines Holdings, Inc. (formerly known as iLearningEngines Inc.), a Delaware corporation ("Holdings").

7.      On April 16, 2024 (the "Closing Date"), as contemplated in the Merger Agreement, ARRW consummated the merger transactions contemplated by the Merger Agreement, following the approval by ARRW's stockholders at a special meeting of stockholders held on April 1, 2024, whereby Merger Sub merged with and into Holdings with the separate corporate existence of Merger Sub ceasing (the "Merger" and, together with the other transactions contemplated by the Merger Agreement, the "Business Combination"). In connection with the consummation of the Merger on the Closing Date, ARRW changed its name from Arrowroot Acquisition Corp. to iLearningEngines, Inc. and Holdings changed its name from iLearningEngines Inc. to iLearningEngines Holdings, Inc.

8.      iLE is a publicly traded company that is traded on The Nasdaq Stock Market LLC ("Nasdaq") under the symbol "AILE".[2]  On December 23, 2024, the Company received a letter

---

[2] As of September 30, 2024, there were 141,173,275 shares of iLE's common stock issued and outstanding and over 100 registered stockholders of record of iLE's common stock.  This number does not include "street name," or beneficial holders, whose shares are held of record by banks, brokers, financial institutions, and other nominees.

3

notifying the Company that iLE's securities will be delisted from Nasdaq and trading in iLE's common stock and warrants will be suspended at the opening of business on January 2, 2025.

9. A corporate organization chart is attached hereto as **Exhibit A**.

**B.     Business Overview**

10. The Company offers an artificial intelligence platform focused on automation of learning and enabling organizations to drive mission critical outcomes at scale (the "AI Learning and Engagement Platform"). The AI Learning and Engagement Platform has cloud-based, mobile, offline, and multimedia capabilities that can be used to deliver highly personalized learning and engagement modules. The Company has developed an in-process learning platform that enables organizations to deliver learning in the flow of day-to-day activities.

**C.     Operations**

11. The Debtors maintain operations throughout the United States of America and in Dubai Free Zone, United Arab Emirates, as well as through non-debtor subsidiaries in India and Australia. The Debtors principal place of business is currently 6701 Democracy Boulevard, Suite 300, Bethesda, Maryland 20817.

12. The Debtors' workforce consists mainly of software engineers, general business, and administrative support in the United States and Dubai, United Arab Emirates. As of the date hereof, the Debtors directly employ a total of 7 full-time employees, 4 of which are located in the United States and 3 of which are located in the United Arab Emirates.[3]

---

[3] As of the Petition Date, the Debtors employed approximately 12 individuals. However, as set forth in further detail below, certain individuals were placed on administrative leave on December 5, 2024, and subsequently resigned from the Company on December 23, 2024.

**D.     Prepetition Indebtedness[4]**

*i.     Revolving Loan Agreement*

13.     On April 17, 2024 (the "Loan Closing Date"), Holdings entered into a *Loan and Security Agreement* (the "Revolving Loan Agreement"), by and among Holdings as borrower, the lenders party thereto (the "Lenders") and East West Bank, as administrative agent and collateral agent for the Lenders ("Agent").  On the Loan Closing Date, East West Bank was the sole Lender.  The Revolving Loan Agreement provided for (i) a revolving credit facility in an aggregate principal amount of up to $40.0 million and (ii) an uncommitted accordion facility allowing Holdings to increase the revolving commitments by an additional principal amount of $20.0 million at Holdings' option and upon Agent's approval (collectively, the "Revolving Loans"). Holdings drew $40.0 million in Revolving Loans on the Loan Closing Date, which was used (x) to repay in full Holdings' existing indebtedness under a (i) *Loan and Security Agreement*, dated as of December 30, 2020, between Holdings and Venture Lending & Leasing IX, Inc., (ii) *Loan and Security Agreement*, dated as of October 21, 2021, between Holdings, and Venture Lending & Leasing IX, Inc. and WTI Fund X, Inc. and (iii) *Loan and Security Agreement*, dated as of October 31, 2023, between Holdings and WTI Fund X, Inc. and for (y) for general corporate purposes.

14.     The obligations under the Revolving Loan Agreement are secured by a perfected security interest in substantially all of Holdings' assets except for certain customary excluded property pursuant to the terms of the Revolving Loan Agreement. On the Loan Closing Date, iLE and IN2VATE, L.L.C. (together, the "Guarantors") entered into a *Guaranty and Suretyship Agreement* (the "Guaranty") with the Agent, pursuant to which the Guarantors provided a

---

[4] The description provided herein of the prepetition indebtedness is preliminary in nature and will be supplemented, to the extent necessary, in the declaration the Debtors intend to file in support of the First Day Motions.

guaranty of Holdings' obligations under the Revolving Loan Agreement and provided a security interest in substantially all of the Guarantors' assets except for certain customary excluded property pursuant to the terms of the Guaranty.

15. The maturity date of the Revolving Loan is April 17, 2027.

### ii. Revolving Loan Agreement Amendment

16. On June 28, 2024, Holdings entered into a *First Amendment to Loan and Security Agreement* (the "Amendment") with the Lenders and Agent, which amends the Revolving Loan Agreement, in order to, among other things, (i) increase the Maximum Revolving Advances Limit (as defined therein) from $40.0 million to $60.0 million, (ii) designate Valley National Bank as a new lender to the Revolving Loan Agreement with a Revolving Advance Commitment (as defined therein) of $20.0 million and (iii) modify the minimum liquidity financial covenant to require that Holdings maintain at least $12.0 million in cash and cash equivalents with the Agent at all times. On June 28, 2024, Holdings drew the full $20.0 million in additional Revolving Advances (as defined in the Loan Agreement) made available after giving effect to the Amendment.

17. On September 13, 2024, the Company paid down $6.0 million of the Revolving Loans, bringing the net loan balance to $54.0 million.

### E. Principal Assets and Liabilities

18. The Debtors' most recent set of unaudited financial statements reflects assets with a book value totaling approximately $148,848,000.00 and liabilities totaling approximately $141,036,000.00 as of September 30, 2024.

19. The Debtors' assets consist almost entirely of accounts receivable. The Debtors' liabilities include, among other things, accounts payable, accrued expenses, the Debtors'

obligations under the Revolving Loan Agreement, and certain subordinated debt that the Debtors are still in the process of analyzing to determine the outstanding amount. As of the Petition Date, the current amount outstanding under the Revolving Loan Agreement is approximately $54.0 million in principal.

II.     **EVENTS LEADING TO THE FILING OF THE CHAPTER 11 CASES**

   A.     **Special Committee Investigation**

20.    On September 5, 2024, the Company announced that its Board of Directors (the "Board") had formed a special committee (the "Special Committee") consisting of independent directors to investigate (the "Investigation") allegations raised in a report issued on August 29, 2024, by Hindenburg Research LLC. The Special Committee engaged Paul Hastings, LLP to conduct the Investigation.

21.    On November 11, 2024, the Audit Committee (the "Audit Committee") of the Board, based on the recommendation of, and after consultation with, the Special Committee, determined that (i) the audited consolidated financial statements of Holdings, as of December 31, 2023, and 2022 and for each of the three years in the period ended December 31, 2023, which were reported in the Current Report on Form 8-K filed by the Company on April 22, 2024 (the "Super 8-K"), (ii) the audited consolidated financial statements of Holdings, as of December 31, 2022, and 2021 and for each of the three years in the period ended December 31, 2022, which were reported in the registration statement on Form S-4 initially filed by the Company with the U.S. Securities and Exchange Commission (the "SEC") on September 5, 2023, and declared effective on February 2, 2024 (the "S-4"), in connection with the Business Combination, (iii) the Company's unaudited financial statements for the quarter ended June 30, 2024, (iv) Holdings' unaudited financial statements for the quarter ended

7

March 31, 2024, which were reported in the Super 8-K, and (v) Holdings' unaudited financial statements for the quarters ended June 30, 2022, September 30, 2022, June 30, 2023, and September 30, 2023, which were reported in the S-4 ((i)-(v) collectively, the "Non-Reliance Period"), as previously filed with the SEC, should no longer be relied upon.

22. On November 15, 2024, acting based on information identified by the Audit Committee during the course of the Special Committee's investigation, Marcum LLP, the Company's independent registered public accounting firm, informed the Audit Committee of its conclusion that its reports, dated April 22, 2024, and September 1, 2023, on the Company's previously issued consolidated financial statements as of December 31, 2023, and 2022 and for each of the three years in the period ended December 31, 2023, and as of December 31, 2022, and 2021 and for each of the three years in the period ended December 31, 2022, respectively, should no longer be relied upon.

23. On December 5, 2024, the Board placed Harish Chidambaran, the Company's Chief Executive Officer, S. Farhan Naqvi, the Company's Senior Vice President–Corporate Development and former Chief Financial Officer, Balakrishnan Arackal, the Company's President and Chief Business Officer, and Ramakrishnan Parameswaran, the Company's Senior Vice President–Technology and Products (collectively, the "Executives"), on administrative leave from their respective positions pending the conclusion of the Investigation. On Decemzer 23, 2024, the Executives resigned from their positions with the Company. Messrs. Chidambaran and Arackal, however, continue to serve on the Board.

24. On December 5, 2024, the Board appointed Thomas Olivier to serve as the Company's Interim Chief Executive Officer and designated Mr. Olivier as its interim principal executive officer.

**B.     Other Investigations and Inquiries**

25.     On October 17, 2024, the Division of Enforcement of the SEC issued a subpoena to the Company seeking various documents and information. The Company is in the process of responding to the subpoena and intends to cooperate with the SEC.

## III.    EMERGENCY MOTIONS[5]

26.     In furtherance of their restructuring efforts, the Debtors have filed the Emergency Motions prior to filing this declaration, and respectfully request that the Court enter the proposed orders granting the relief requested in the Emergency Motions. I believe that the relief sought in each of the Emergency Motions (a) is vital to the Debtors' transition to, and operation in, chapter 11 with minimal interruption or disruption to their business or loss of productivity or value, and (b) constitutes a critical element in maximizing value during these Chapter 11 Cases.

27.     The Emergency Motions that the Debtors will request the Court hear at the initial "first day" hearing in these Chapter 11 Cases are as follows:

- *Debtors' Motion for Entry of an Order Authorizing (I) the Joint Administration of the Debtors' Chapter 11 Cases for Procedural Purposes Only; (II) the Filing of a Consolidated List of Creditors Holding the Thirty Largest Unsecured Claims and (III) the Filing of a Consolidated Creditor Matrix*

- *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Pay Certain Pre-Petition Employee Obligations; (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief*

28.     I have reviewed each of the Emergency Motions (including the exhibits and schedules attached thereto) listed above, and, to the best of my knowledge, I believe that the facts set forth in the Emergency Motions are true and correct. If I were called upon to testify, I

---

[5] Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to them in the Emergency Motions, as applicable.

could and would, based on the foregoing, testify competently to the facts set forth in each of the Emergency Motions.

29. Furthermore, as a result of my personal knowledge, information supplied to me by other members of the Debtors' management, and from my colleagues that perform services for the Debtors, from my review of relevant documents, and upon my opinion based upon my experience, discussions with the Debtors' advisors and knowledge of the Debtors' operations and financial condition, I believe the relief sought in the Emergency Motions is necessary for the Debtors to effectuate a smooth transition into chapter 11 bankruptcy and to avoid irreparable harm to their business and estates, and is in the best interests of the Debtors' estates, creditors, and other stakeholders.

## **CONCLUSION**

In furtherance of their chapter 11 efforts, for the reasons stated herein and in each of the Emergency Motions, the Debtors respectfully request that the Court grant the relief requested in the Emergency Motions.

Dated: December 28, 2024                    */s/ Bonnie-Jeanne Gerety*
                                            Bonnie-Jeanne Gerety
                                            Interim Chief Financial Officer